**EXHIBIT A**

**CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE OF ALL CLAIMS**

*Stacie Cavner, et al. v. Continental Motors, Inc., et al.*
Washington Superior Court for King County
Cause No. 12-2-18837-8 SEA

This Confidential Settlement Agreement and Release of All Claims is executed to fully settle any and all claims of Preston Cavner against Defendant Northwest Seaplanes, Inc. brought or which could have been brought by Preston Cavner in *Stacie Cavner, et al. v. Continental Motors, Inc. et al.*, Washington Superior Court for King County Cause No. 12-2-18837-8 SEA.

## 1. DEFINITIONS

The following definitions apply to the listed terms wherever those terms appear throughout this Agreement. Where the listed terms are also further defined elsewhere in the body of this Agreement, the definitions listed here nonetheless apply and shall serve to further explain the meaning of those terms. Moreover, each defined term stated in a singular form shall include the plural form, each defined term stated in plural form shall include the singular form, and each defined term stated in the masculine form or in the feminine form shall include the other.

### A. Accident

"Accident" means the airplane crash occurring on June 1, 2010 near Merrill Field in Anchorage, Alaska involving Stacie Cavner, Preston Cavner, Hudson Cavner, a minor, Myles Cavner, a minor, and Rachel Zientek, a minor who has now reached majority age.

### B. Aircraft

"Aircraft" means the Cessna 206 aircraft, N59352, and all of its component parts.

### C. Claimant

"Claimant" means Preston Cavner, and all of his heirs, children, spouse, parents, siblings, beneficiaries, assignees, subrogees, and successors in interest, and all other Persons to the extent those Persons might have a right to assert a Claim on behalf of Preston Cavner or to assert a Claim derivative of Preston Cavner's Claims.

### D. Claims

"Claims" mean all past, present, or future claims, notices, demands, requests, inquiries, actions, rights, counts, causes of action, lawsuits, cross-claims, counterclaims, administrative proceedings, and allegations of any kind, character, or nature, whether known, unknown, or suspected, involving, arising out of, relating to, or alleging personal or bodily injury, wrongful

death, survival actions, property damage, or loss of society, companionship, services, or consortium, or any other right to pecuniary or non-pecuniary compensation, fees, costs, or punitive damages, whether at law or in equity, and whether sounding in tort, contract, equity, nuisance, trespass, negligence, strict liability, or any statutory or common law cause of action of any kind whatsoever arising from or relating to the Accident or the Aircraft. "Claims" does not include any claim by Catlin Insurance Company or its agents, including any claim by or through a right of subrogation, arising from or related to any payment for damage to or personal property on the Aircraft.

**E. CMS**

"CMS" means the Centers for Medicare and Medicaid Services.

**F. Confidential Release**

"Confidential Release" means this Confidential Settlement Agreement and Release of All Claims.

**G. Effective Date**

"Effective Date" means the later of the dates, if not the same day, on which the Claimant executes this Agreement.

**H. Insurer**

"Insurer" means Phoenix Aviation Managers, Inc. and Old Republic Insurance Company in their capacity as insurers of Northwest Seaplanes, Inc. with respect to the Accident.

**I. Lawsuit**

The "Lawsuit" means the action filed in the Superior Court of the State of Washington for King County under Cause No. 12-2-18837-8 SEA.

**J. MSPRC**

"MSPRC" means a Medicare Secondary Payer Recovery Contractor.

**K. Parties**

Claimant and Releasees collectively are the "Parties."

### L. Persons

"Persons" means individuals, corporations, companies, partnerships, associations, trusts, joint ventures, and any other entities or organizations and any federal, state, or local governmental or quasi-governmental bodies or political subdivisions, or any agencies, departments, boards, or instrumentalities thereof.

### M. Plaintiffs

"Plaintiffs" mean all party-plaintiffs to the Lawsuit, specifically Claimant, Preston Cavner, Hudson Cavner by and through his Litigation Guardian ad Litem, Carolann O'Brien Storli, the Estate of Myles Cavner, by and through its Personal Representative Carolann O'Brien Storli, Rachel Zientek, Tammy Zientek, and Michael Zeintek.

### N. Releasees

Unless specifically reserved in paragraph 2.F below, "Releasees" means Northwest Seaplanes, Inc., its predecessors in interest, its successors in interest, and its present, and former principals, parents, divisions, subsidiaries, shareholders, directors, officers, agents, employees, affiliates, attorneys, assigns, insurers, reinsurers, brokers, and sureties.

## 2. <u>RELEASE OF ALL CLAIMS</u>

**A.** In consideration of the payment described in Paragraph 3 below, Claimant hereby releases, agrees not to sue, and forever discharges Releasees from any and all Claims arising from or relating in any way to the Accident or the Aircraft.

**B.** This full and final release of Releasees is intended to cover any and all injury, damage, or loss to the Claimant whether now known or which may later develop or be discovered, including all effects or consequences thereof, arising from or related in any way to the Accident or the Aircraft.

**C.** Claimant shall not, either alone or in concert with others, or by virtue of judicial proceedings of any kind whatsoever, make or cause to be made, acquiesce in, or assist in the bringing of any further Claims against the Releasees.

**D.** This release shall be construed as a general release by Claimant of Releasees and shall be a fully binding and complete settlement of all Claims between Claimant and the Releasees.

**E.** Claimant further agrees that he has accepted the consideration described in Paragraph 3 below as a complete compromise of matters involving disputed issues of law and fact, and Claimant assumes the risk that the facts or law may be otherwise than Claimant believes.

**F.** Notwithstanding any other provision in this Confidential Release, it is understood and agreed that Claimant expressly reserves and does not release Continental Motors, Inc. ( "CMI") and Ace Aviation, Inc., from any Claims arising from or related in any way to the Accident or the Aircraft, including Claims made against those Defendants remaining in the Lawsuit, and that Claimant intends to continue with the prosecution of the Lawsuit against CMI and Ace Aviation.

**G.** This Confidential Release is not intended to and does not, release any claims Claimant may have against any person or entity not defined as a Releasee herein. It is further understood and agreed that Claimants expressly reserve and do not release any other allegedly at-fault Persons not defined as Releasees herein, including Ace Aviation and CMI.

## 3. <u>CONSIDERATION & PAYMENT</u>

In consideration of the terms, promises, and releases contained in this Confidential Release (with the exception of the Confidentiality Provision), and in full and final settlement of all Claims against Releasees, Releasees, by and through their Insurer, agree to pay, by check to □Brodkowitz Law in trust for Preston Cavner,□the sum of two hundred and fifty thousand dollars ($250,000.00) (the "Settlement Funds"), less any amount due to Medicare for any pre-settlement conditional payments which amount will be paid directly to Medicare by Insurer as described further in paragraph 5.B. below.

Payment is conditioned on:

**A.** The contemporaneous settlement of all Claims against Releasees by all Plaintiffs;

**B.** Court approval of this settlement without a Medicare Set-Aside and finding that the Parties have adequately considered and protected any interest Medicare may have in this settlement. Documentation of this approval shall be attached to and incorporated within this Confidential Release as Exhibit A.

**C.** Court approval of the contemporaneous settlement of all Claims of Hudson Cavner against Releasees pursuant to SPR 98.16W, with the order attached to and incorporated within this Confidential Release as Exhibit B;

**D.** Court approval of the contemporaneous settlement of all Claims of the Estate of Myles Cavner against Releasees pursuant to SPR 98.08W, with the order attached to and incorporated within this Confidential Release as Exhibit C;

**E.** Dismissal with prejudice of Ace Aviation's cross-claim against NW Seaplanes; and

**F.** If, prior to finalizing this settlement, CMI answers with a cross-claim against NW Seaplanes, dismissal with prejudice of CMI's cross-claim against NW Seaplanes.

Payment shall be made within 30 days of the later of: (1) receipt of the last Confidential Release signed by Plaintiffs along with the required court orders approving same, or (2) receipt of the Conditional Payment Demand Notice (“CPDN”) from CMS/MSPRC for any Plaintiff who is a Medicare beneficiary.

## 4. INDEMNIFICATION AND HOLD HARMLESS

**A.** Claimant agrees that he is responsible for any and all payments, liens, repayments or satisfaction of any kind or nature due or payable to any person, organization, health insurance company, health care provider, physician, hospital, HMO, PPO, Medicare, Medicaid, SSDI, mechanic, vendor or supplier of any nature or kind that may have any type of lien or encumbrance of any kind on the proceeds of this settlement and Confidential Release.

**B.** Claimant shall defend, indemnify, and otherwise hold harmless Releasees from any and all claims by: (a) any successor of Claimant, including any receiver or trustee; (b) any medical insurance carrier or payer, including but not limited to Regence Blue Shield, Medicare, Medicaid, or SSDI; (c) any provider of medical care to Claimant related to or as a result of the Accident, or (d) any other Person seeking to recover from Releasees for costs, expenses, fees, or other liabilities relating to the Accident or Aircraft. This indemnification and hold harmless includes, but is not limited to, any liens made, asserted, or filed against Claimant under the laws of this or any other jurisdiction arising from or related in any way to the Accident or the Aircraft. For any claim covered by this paragraph, Releasees shall have the right to retain counsel of their choice to defend their interests, and Claimant shall pay all fees, costs, and expenses, including attorneys' fees, reasonably incurred in connection with such defense.

**C.** The indemnification and hold harmless agreement set forth in this paragraph 4 does not apply to any claim by Catlin Insurance Company or its agents arising from or related to any payment for damage to or personal property on the Aircraft.

**D.** The indemnification and hold harmless agreement set forth in this paragraph 4 does not apply to any costs and expenses incurred in the process of obtaining court approval of this Confidential Release as set forth in paragraph 3.B. Each Party shall bear his or its own costs and expenses associated with obtaining court approval of this settlement and its terms. Notwithstanding the above, Releasees have agreed to take the lead on preparing and filing the pleadings to be submitted for the purpose of obtaining court approval as set forth in paragraph 3.B.

## 5. MEDICARE

**A.** The Parties acknowledge that Claimant became a Medicare beneficiary on November 1, 2012. The Parties are aware of no conditional payments made by Medicare prior to the time of signing this Confidential Release, and it is not the intention of the Parties to shift the responsibility of conditional payments to Medicare.

**B.** The Parties have contacted Medicare and received a Conditional Payment Notice from the MSPRC dated March 15, 2013 ("CPN"), and attached hereto as Exhibit D. The CPN indicates that Medicare has made no conditional payments for treatment of Claimant's injuries arising from or relating to the Accident. Notwithstanding the CPN statement that no conditional payments have been made, Claimant agrees that this settlement must be reported under Section 111 of the Medicare, Medicaid and SCHIP Extension Act. Claimant also agrees that the amount of any conditional payments identified in a revised CPN received from MSPRC at any time prior to payment by Insurer to Claimant of the Settlement Funds will be withheld by Insurer to later be paid directly to CMS/MSPRC following receipt of a Conditional Payment Demand letter. Any withheld funds beyond the amount demanded in the Conditional Payment Demand letter thereafter will be paid to Claimant. If MSPRC revises its CPN at any time after payment by Insurer to Claimaint of the Settlement Funds, Claimant acknowledges that he is responsible for payment of any of amounts demanded by CMS/MSPRC and that Releasees are not responsible for such payment.

**C.** Claimant and Releasees represent and warrant that the interests of CMS have been taken into account with regard to the settlement. The Parties understand that MSPRC presently does not require nor does MSPRC have a process for approving a Medicare Set-Aside ("MSA") for future conditional payments in liability settlements. The Parties have agreed to settle Claimant's Claims for $250,000, representing the available insurance limits under the applicable policy. The Parties recognize that this settlement amount is substantially less, by a factor of more than five, than the medical expenses already incurred by Claimant for medical care predating this settlement, which amount exceeds $1.3 million. The full amount paid by Releasees in settlement of all Claims is intended to address, in part, these past medical expenses, past pain and suffering, spousal loss of consortium, and parental loss of consortium. The Parties have not attempted to maximize any part of the settlement to Medicare's detriment.

**D.** Subject to the court approval set forth in paragraph 3.B above and Exhibit A to this Confidential Release, Claimant acknowledges and accepts the risk that CMS may have a right to recover, from the Settlement Funds, conditional payments that were not resolved at the time of settlement or which may be claimed by CMS in the future.

**E.** Other than payment by Insurer, as set forth in paragraph 5.B., of any conditional payments identified by Medicare prior to payment of the Settlement Funds, Claimant waives all other rights against Releasees relating to conditional payments made by Medicare, including a private cause of action against the Releasees under the Medicare Secondary Payer Act or other applicable or amended federal law.

**F.** Claimant agrees to fully satisfy, indemnify, defend and hold harmless Releasees from any and all penalties, liens, conditional payments, demands, expenses, and actions at law or equity, or other payments if CMS, MSPRC or any Persons acting as their agent make any claim against or demand to Releasees arising from or related to conditional payments made at any time by Medicare.

**G.** Claimant agrees that no action or decision by CMS/MSPRC concerning Claimant's Medicare-covered costs or conditional payments will render this Confidential Release void or in any way affect the finality of this Confidential Release.

## 6. <u>REPRESENTATIONS BY CLAIMANT</u>

Claimant warrants that:

**A.** No other person or entity has or has had any interest in the Claims being released herein, except as otherwise set forth herein;

**B.** He has the sole right and exclusive authority to execute this Confidential Release and receive the payment specified herein;

**C.** He has not sold, assigned, transferred, conveyed, or otherwise disposed of any of the claims, demands, obligations, or causes of action referred to in the Lawsuit or this Confidential Release;

**D.** He has read the terms of this Confidential Release, and fully understands and voluntarily accepts them;

**E.** Prior to entering into this Confidential Release, he consulted with his attorneys on matters relating to its terms and conditions and with regard to his obligations under the Medicare Secondary Payer Statute; and

**F.** No Releasees have made any representations to Claimant or any representatives of Claimant with respect to the tax consequences of this Confidential Release or the payment to be made hereunder.

## 7. <u>REPRESENTATIONS BY NORTHWEST SEAPLANES, INC.</u>

Northwest Seaplanes, Inc., warrants that:

**A.** There is no other liability insurance policy, other than that of Insurer, that provides coverage to Northwest Seaplanes for Claimant's Claims.

**B.** Northwest Seaplanes, Inc. will cooperate, upon reasonable notice and accommodation, with any subpoena issued to it or its employees in the Lawsuit. Claimant will reimburse Northwest Seaplanes and/or its employees for any travel and other expenses, but not attorneys' fees, incurred in compliance with any subpoena or other request for assistance by Claimant or Claimant's attorneys. Northwest Seaplanes' cooperation does not and will not constitute a waiver of any privilege nor will it require of Northwest Seaplanes or its employees anything other than providing truthful testimony to the best of the witness' recollection.

**C.** No contractual indemnity obligation of any kind exists between CMI and Northwest Seaplanes or Ace Aviation and Northwest Seaplanes.

**D.** Neither Defendant CMI nor Defendant Ace Aviation is a predecessor in interest, successor in interest, present or former principal, parent, division, subsidiary, shareholder, director, officer, agent, employee, attorney, assignee, dealer, distributor, insurer, reinsurer, broker, or surety of Northwest Seaplanes, Inc.

## 8. NO ADMISSION OF LIABILITY

This Confidential Release and the consideration to be paid in exchange is intended to be and is a compromise of doubtful and disputed claims between Claimant and the Releasees, and shall not be construed as an admission of liability by Releasees, nor shall this Confidential Release or the payments hereunder be construed as a waiver, modification, or retraction of any position taken by Releasees in this or any other legal proceeding.

## 9. DISMISSAL OF LAWSUIT

**A.** Upon receipt of the payment specified in paragraph 3 above Claimant shall cooperate in the prompt dismissal with prejudice of all claims against Releasees in the Lawsuit. Claimant hereby authorizes and directs his attorneys to take all necessary steps to dismiss all claims against Releasees in the Lawsuit, without an award of fees or costs to either Claimant or Releasees, upon receipt of the aforementioned payment.

**B.** Claimant further agrees to cooperate with Releasees in establishing the reasonableness of this settlement upon request.

## 10. CONFIDENTIALITY

**A.** The Parties acknowledge and agree that they have independent and important interests in keeping confidential the terms of and amount paid under this Confidential Release in addition to the amounts to be paid and terms of settlement between all other Plaintiffs and Releasees. Therefore, for several independent privacy reasons, the Parties do not wish the amount paid or received under this Agreement or its terms in any way to be publicly disclosed to any person or entity who is not directly involved in this Confidential Release and the resolution of Plaintiffs' claims against Releasees.

**B.** Accordingly, the Parties to this Confidential Release hereby agree that they will keep confidential the terms of and amounts paid under this Confidential Release and the amounts to be paid and terms of settlement between all other Plaintiffs and Releasees. Hereafter, the agreement set forth in the immediately preceding sentence is referred to as the "Mutual Confidentiality Agreement."

**C.** Notwithstanding the Mutual Confidentiality Agreement set forth in the

immediately preceding paragraph, the amount paid under this Agreement may be disclosed by any party:

(i) as required by law;
(ii) as required by a court order;
(iii) as required to enforce this Confidential Release;
(iv) as a defense to an action to enforce this Confidential Release;
(v) to such party's attorneys, tax advisors and/or financial planners;
(vi) to any applicable taxing authority;
(vii) to satisfy reporting and payment obligations related to Medicare's interest;-
(viii) as necessary in defense of any claim, demand, or complaint asserting any alleged right to any of the settlement proceeds;
(ix) as necessary to obtain any required court approvals of the settlement; and
(x) to the Court presiding over this Claim.

**D.** In agreeing to the Mutual Confidentiality Agreement set forth in the immediately Preceding paragraph, the Parties have intentionally and specifically not allocated any monetary amount as the consideration for the Mutual Confidentiality Agreement. The parties have not allocated any monetary amount as consideration for the Mutual Confidentiality Agreement because each party independently believes that the other party's agreement to keep confidential the terms of and amount paid under this Confidential Release is the sufficient and adequate consideration Mutual for the Confidentiality Agreement.

With regard to Persons to whom disclosure is not allowed, the Parties agree that the only response to any inquiry about the amount of the settlement payments or the terms of this Confidential Release shall be that the Claims were settled, and that the terms of the settlement are confidential.

## 11. GOVERNING LAW

This Confidential Release shall be construed and interpreted in accordance with substantive law of the State of Washington.

## 12. INTEGRATION, MODIFICATION, AND BINDING EFFECT

This Confidential Release constitutes the entire agreement between the Parties with respect to the subject matter hereof, and supersedes all discussions, agreements, and understandings, both written and oral, among the Parties with respect thereto. This Confidential Release may not be modified except by written agreement of Releasees, and Claimant forever relinquishes the right to unilaterally modify or rescind this Confidential Release based upon any actual or alleged unilateral or mutual mistake of fact or law in its formation or for any other reason. This Confidential Release shall be binding upon and inure to the benefit of the executors, administrators, personal representatives, heirs, successors, and assigns of each.

## 13. AUTHORITY TO EXECUTE

By his or her signature below, each signatory warrants and represents that he or she has the full authority to bind the persons or entities for whom execution of this Confidential Release is being made. Each signatory further warrants that this Confidential Release was signed voluntarily.

## 14. CONSTRUCTION

This Confidential Release is the jointly drafted product of arms-length negotiations between Claimant and the Releasees, each of whom had the benefit of advice from counsel, and it shall be so construed. As such, Claimant will not claim that any ambiguity in this release should be construed against Releasees.

EXECUTED this 29 day of July 2013.

By:
Preston Cavner

**ACKNOWLEDGEMENT**

STATE OF ALASKA )
) ss.
THIRD JUDICIAL DISTRICT )

On this 29th day of July, 2013, before me personally appeared Preston Cavner to me known to be the person who executed the within and foregoing instrument, and acknowledged said instrument to be a free and voluntary act and deed, for the uses and purposes therein mentioned.

IN WITNESS WHEREOF I have hereunto set my hand and affixed my official seal the day and year first above written.

Notary Public in and for the State of Alaska
My commission expires: 8-8-13
Printed Name: Dru Lippert

EXECUTED this ______ day of _______________ 2013.

NORTHWEST SEAPLANES, INC.

By_________________________________

Its _________________________________